

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

**DOCKET NO. 1817**

**IN RE CERTAINTEED CORP. ROOFING SHINGLE PRODUCTS LIABILITY LITIGATION**

*Thomas Rybarczyk v. CertainTeed Corp.*, S.D. Indiana, C.A. No. 1:07-576
*Carl Chiucchierini, et al. v. CertainTeed Corp.*, W.D. New York, C.A. No. 6:07-6210
*Frank J. Crocco, et al. v. CertainTeed Corp.*, N.D. Ohio, C.A. No. 1:07-1373

### CONDITIONAL TRANSFER ORDER (CTO-2)

On February 15, 2007, the Panel transferred six civil actions to the United States District Court for the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* 474 F.Supp.2d 1357 (J.P.M.L. 2007). Since that time, four additional actions have been transferred to the Eastern District of Pennsylvania. With the consent of that court, all such actions have been assigned to the Honorable Louis H. Pollak.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Eastern District of Pennsylvania and assigned to Judge Pollak.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Eastern District of Pennsylvania for the reasons stated in the order of February 15, 2007, and, with the consent of that court, assigned to the Honorable Louis H. Pollak.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Eastern District of Pennsylvania. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

Inasmuch as no objection is pending at this time, the stay is lifted.

JUN 14 2007

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel



**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

**DOCKET NO. 1817**

**IN RE CERTAINTEED CORP. ROOFING SHINGLE PRODUCTS LIABILITY LITIGATION**

*Thomas Rybarczyk v. CertainTeed Corp.*, S.D. Indiana, C.A. No. 1:07-576
*Carl Chiacchierini, et al. v. CertainTeed Corp.*, W.D. New York, C.A. No. 6:07-6210
*Frank J. Crocco, et al. v. CertainTeed Corp.*, N.D. Ohio, C.A. No. 1:07-1373

**CONDITIONAL TRANSFER ORDER (CTO-2)**

On February 15, 2007, the Panel transferred six civil actions to the United States District Court for the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* 474 F.Supp.2d 1357 (J.P.M.L. 2007). Since that time, four additional actions have been transferred to the Eastern District of Pennsylvania. With the consent of that court, all such actions have been assigned to the Honorable Louis H. Pollak.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Eastern District of Pennsylvania and assigned to Judge Pollak.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Eastern District of Pennsylvania for the reasons stated in the order of February 15, 2007, and, with the consent of that court, assigned to the Honorable Louis H. Pollak.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Eastern District of Pennsylvania. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

/s/ Jeffery N. Lüthi
Clerk of the Panel





# UNITED STATES DISTRICT COURT
# DISTRICT OF INDIANA

| | |
|---|---|
| THOMAS RYBARCZYK, | ( |
| Plaintiff, | ( CASE NO. |
| v. | ( COMPLAINT AND JURY DEMAND |
| CERTAINTEED CORPORATION and DOES 1-50, | ( |
| Defendant. | ( |

1: 07-cv-0576-LJM-TAB

07-2659



## CLASS ACTION COMPLAINT

Plaintiffs, on behalf of themselves and other similarly situated, by and through their undersigned counsel, files this Complaint, and in support thereof state and aver as follows:

## NATURE OF ACTION

1. This is a consumer class action on behalf of all persons and entities in the state of Indiana who purchased CertainTeed shingles.

2. Defendant CertainTeed Corporation ("CertainTeed") manufactured and marketed roofing shingle products under various brand names, including without limitation, Horizon, Independence, Hearthstead, Hallmark, Woodscape, CertainTeed, Sealdon, Custom Sealdon and War-Sealdon ("Shingles"). The Shingles, which are composed of asphalt, natural fibers, filler and mineral granules have been marketed and warranted by Defendants as durable, and as offering long-lasting protection.

1
Complaint And Jury Demand

Indiana Complaint.doc

3. Commencing in or around 1987, CertainTeed began manufacturing, warranting, advertising and selling defective Shingles to tens of thousands of consumers throughout Indiana. Defendant failed to adequately design, formulate, and test the Shingles before warranting, advertising and selling them as durable and suitable roofing products. Defendant warranted, advertised and sold to Plaintiffs and the Class Shingles that Defendants reasonably should have known were defectively designed, failed prematurely due to moisture invasion, cracking, curling, blistering, deteriorating, and otherwise not performing in accordance with the reasonable expectations of Plaintiffs and the Class that such products be durable and suitable for use as roofing products. As a result, Plaintiffs and the Class have experienced continuous and progressive damage to their property.

4. Defendant's sales brochures stated that the Shingles were, among other things resilient and durable.

5. CertainTeed has consistently represented to consumers that its "ongoing philosophy" regarding its roofing products and even the basis for its name, CertainTeed, is "Quality made certain, satisfaction guaranteed". Defendant has not lived up to that promise.

6. Plaintiffs' Shingles have begun to fail, are failing and will fail before the time period advertised, marketed and guaranteed by CertainTeed.

7. As a result, Plaintiffs and the Class have suffered actual damages in that the roofs on their homes and other structures have and will continue to fail prematurely, resulting in damage to the underlying structure and requiring them to expend thousands of dollars to repair the damages associated with the incorporation of the Shingles into their homes or to prevent such damage from occurring. Damage caused by the defective shingles has included, but is not

Complaint And Jury Demand
2

Indiana Complaint.doc

limited to: damage to underlying felt; damage to structural roof components; damage to plaster and sheetrock; and damage to walls and ceiling structural components.

8. Because of the relatively small size of the typical individual Class member's claims, and because most homeowners have only modest resources, it is unlikely that individual Class members could afford to seek recovery against Defendant on their own. This is especially true in light of the size and resources of the Defendant. A class action is, therefore, the only reasonable means by which Class members can obtain relief from this Defendant.

9. The class Shingles suffer from a set of common defects, as described herein. Despite receiving a litany of complaints during the Class Period from consumers, such as Plaintiffs and the members of the Class, Defendant has refused to effectively notify consumers of the defects, or repair the property damaged by the defects.

**PARTIES**

10. Plaintiff and class representative Thomas Rybarczyk is a citizen of Munster, Indiana, and purchased CertainTeed Shingles for installation on his home in approximately 1994. He first became aware of problems with his shingles in 2004.

11. Defendant CertainTeed Corporation is a corporation with its principal place of business in Valley Forge, Pennsylvania. CertainTeed is a leading North American manufacturer of building materials including roofing, siding, insulation, windows and patio doors, fence, decking, railing, foundations and pipe. The company has approximately 7,000 employees and more than 40 manufacturing facilities throughout the United States. The company had sales of approximately $2.3 billion in 2003.

**JURISDICTION AND VENUE**

12. Venue is proper in this Court because all Plaintiffs are citizens of this State.

3
Complaint And Jury Demand

13.     Defendant CertainTeed conducts substantial business in Indiana, including the sale and distribution of Shingles in Indiana, and has sufficient contacts with Indiana or otherwise intentionally avails itself of the laws and markets of Indiana so as to sustain this Court's jurisdiction over Defendant.

14.     This court has jurisdiction pursuant to 28 USC. 1332. The parties are citizens of different states and the amount in controversy exceeds $5,000,000.00.

## CLASS ALLEGATIONS

15.     This action has been brought and may properly be maintained as a class action pursuant to Federal Rule of Civil Procedure 23, and case law thereunder on behalf of Plaintiffs and all others similarly situated, with the Class defined as follows:

All individuals and entities that have owned, own, or acquired homes, residences, or other structures physically located in Indiana from 1987 through the present on which CertainTeed Shingles are or have been installed. CertainTeed Shingles are defined to include without limitation the following brand names: Horizon, Independence, Hearthstead, Hallmark, Woodscape, CertainTeed, Sealdon, Custom Sealdon and War-Sealdon. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest of Defendants, and Defendants' legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

16.     Members of the Class are so numerous that their individual joinder is impracticable. The proposed class contains hundreds and perhaps thousands of members. The precise number of Class members is unknown to Plaintiffs however Plaintiffs, upon information and belief, believe it is well in excess of 1,000. The true number of Class members is likely to be known by Defendant, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

17.     There is a well-defined community of interest among members of the Class. The claims of the representative Plaintiffs are typical of the claims of the Class in that the

4
Complaint And Jury Demand

representative Plaintiffs, like all Class members, own homes, residences, or other structures on which defective Shingles manufactured by Defendant have been installed. Those Shingles have failed, and will continue to fail, prematurely. The representative Plaintiffs, like all Class members, have been damaged by Defendant's conduct in that they have suffered damages as a result of the incorporation of the defective Shingles into their homes or structures. Furthermore, the factual bases of Defendant's conduct are common to all Class members and represent a common thread of negligent conduct resulting in injury to all members of the Class.

18. There are numerous questions of law and fact common to Plaintiffs and the Class, and those questions predominate over any questions that may affect individual Class members, and include the following:

a) whether the Shingles are defective in that they are subject to moisture penetration and cracking, prematurely fail, and are not suitable for use as an exterior roofing product for the length of time advertised, marketed and warranted;

b) whether Defendant should have known of the defective nature of the Shingles;

c) whether Defendant owed a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture and marketing of the Shingles;

d) whether Defendant breached its duty to Plaintiffs and the Class by designing, manufacturing, advertising and selling to Plaintiffs and the Class defective Shingles and by failing promptly to remove the Shingles from the marketplace or take other appropriate remedial action;

e)  whether the Shingles fail to perform in accordance with the reasonable expectations of ordinary consumers;

f)  whether the benefits of the design of the Shingles do not outweigh the risk of their failure;

g)  whether the Shingles fail to perform as advertised and warranted;

h)  whether Plaintiffs and the Class are entitled to compensatory damages, and the amount of such damages; and

i)  whether Defendant should be declared financially responsible for notifying all Class members of their defective Shingles and for all damages associated with the incorporation of such Shingles into Class Members' homes, residences and other structures.

19. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting statewide, multistate and national consumer class actions, actions involving defective products, and, specifically, actions involving defective construction materials. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class they represent, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the Class.

20. Plaintiffs and the members of the Class have all suffered and will continue to suffer harm and damages as a result of Defendant's conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, the vast majority of the Class members likely would find the cost of litigating their claims to be prohibitive, and would have no effective remedy at law. Because of the relatively small

size of the individual Class member's claims, it is likely that only a few Class members could afford to seek legal redress for Defendant's conduct. Further, the cost of litigation could well equal or exceed any recovery. Absent a class action, Class members will continue to incur damages without remedy. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment would conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

## ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS

21. Defendant is estopped from relying on any statutes of limitation by virtue of its acts of fraudulent concealment, which include Defendant's intentional concealment from Plaintiffs and the general public that their shingles were defective, while continually marketing the Shingles as dependable products that would last for decades. Defendant's acts of fraudulent concealment include failing to disclose that its Shingles were defectively manufactured and would deteriorate in less than half their expected lifetime, leading to damage to the very structures they were purchased to protect. Through such acts Defendant was able to conceal from the public the truth concerning their product.

22. Until shortly before Plaintiffs filed the original complaint, Plaintiffs had no knowledge that the CertainTeed Shingles they purchased were defective and unreliable. Plaintiffs had no reasonable way to discover this defect until shortly before Plaintiffs filed this complaint.

23. Defendant had a duty to disclose that its Shingles were defective, unreliable and inherently flawed in their design and/or manufacture.

7

Complaint And Jury Demand

Indiana Complaint.doc

# FIRST CAUSE OF ACTION
(Negligence)

24. Plaintiffs hereby incorporate by reference the allegations contained in the foregoing paragraphs of this Complaint as if set forth fully herein.

25. Defendant had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, and marketing of the Shingles.

26. Defendant breached its duty to Plaintiffs and the Class by designing, manufacturing, advertising and selling to Plaintiffs and the Class a product that is defective and will fail prematurely, and by failing to promptly remove the Shingles from the marketplace or to take other appropriate remedial action.

27. Defendant knew or should have known that the Shingles were defective, would fail prematurely, were not suitable for use as an exterior roofing product, and otherwise were not as warranted and represented by Defendant.

28. As a direct and proximate cause of Defendant's negligence, Plaintiffs and the Class have suffered actual damages in that they have purchased and installed on their homes and other structures an exterior roofing product that is defective and that fails prematurely due to moisture penetration. These failures have caused and will continue to cause Plaintiffs and the Class to incur expenses repairing and/or replacing their roofs as well as the resultant, progressive property damage.

29. Plaintiffs on behalf of themselves and all others similarly situated, demand judgment against Defendant for compensatory damages for themselves and each member of the Class, for establishment of a common fund, plus attorneys' fees, interest and costs.

## SECOND CAUSE OF ACTION
(Strict Products Liability)

30. Plaintiffs incorporate by reference each of the allegations contained in Paragraphs 1 through 38 of this Complaint.

31. At all relevant times, Defendant was engaged in the business of manufacturing the Shingles which are the subject of this action.

32. The Shingles were expected to and did reach Plaintiffs and the Class without substantial change to the condition in which they were manufactured and sold by Defendant.

33. The Shingles installed on Plaintiffs' and the Class Members' property were and are defective and unfit for their intended use. The use of the Shingles has caused and will continue to cause property damage to Plaintiffs and the Class.

34. Defendant's Shingles fail to perform in accordance with the reasonable expectations of Plaintiffs, the Class, and ordinary consumers, and the benefits of the design of the Shingles do not outweigh the risk of their failure.

35. By reason of the foregoing, Defendant is strictly liable to Plaintiffs and the Class.

36. Plaintiffs on behalf of themselves and all others similarly situated, demand judgment against Defendant for compensatory damages for themselves and each member of the Class, for the establishment of the common fund, plus attorney's fees, interest and costs.

## THIRD CAUSE OF ACTION
(Breach of Express Warranty)

37. Plaintiffs incorporate by reference each of the allegations contained in Paragraphs 1 through 45 of this Complaint.

38. Defendant marketed and sold its Shingles into the stream of commerce with the intent that the Shingles would be purchased by Plaintiffs and members of the Class.

39. Defendant expressly warranted that its Shingles are permanent, impact resistant, and would maintain their structural integrity. Defendant's representations through its written warranties regarding the durability of, and the quality of, the Shingles created express warranties which became part of the basis of the bargain Plaintiffs and members of the Class entered into when they purchased the Shingles.

40. Defendant expressly warranted that the structural integrity of the Shingles purchased by Plaintiff and Class members would last as long as 30 years.

41. Defendant breached its express warranties to Plaintiffs and the Class in that Defendant's Shingles are neither permanent nor impact resistant and did not, and do not, maintain their structural integrity and perform as promised. Defendant's Shingles crack, split, curl, discolor, delaminate and deteriorate prematurely, and they otherwise do not perform as warranted by Defendant, and they have caused and/or are causing damage to the underlying roof elements, structures and/or interiors of Plaintiffs' and Class members' homes, residences and structures.

42. Defendant's warranties fail of their essential purpose because it purports to warrant that the Shingles will be free from structural breakdown for as much as 30 years when, in fact, Defendant's Shingles fail far short of the applicable warranty period.

43. Moreover, because the warranties limit Plaintiffs' and Class members' recovery to replacement of the Shingles piece by piece, with replacement labor not included, Defendant's warranties are woefully inadequate to repair and replace failed roofing, let alone any damage suffered to the underlying structure due to the inadequate protection provided by the CertainTeed

Shingles. The remedies available in Defendant's warranties are limited to such an extent that they do not provide a minimum adequate remedy.

44.  The limitations on remedies and the exclusions in Defendant's warranties are unconscionable and unenforceable.

45.  Defendant has denied and/or failed to pay in full the warranty claims.

46.  As a result of Defendant's breach of its express warranties, Plaintiffs and the Class have suffered actual damages in that they purchased and installed on their homes and other structures an exterior roofing product that is defective and that has failed or is failing prematurely due to moisture penetration. This failure has required and/or is requiring Plaintiffs and the Class to incur significant expense in repairing and/or replacing their roofs. Replacement is required to prevent on-going and future damage to the underlying roof elements, structures and/or interiors of Plaintiffs' and Class members' homes and structures.

47.  Plaintiffs on behalf of themselves and all others similarly situated, demand judgment against Defendant for compensatory damages for themselves and each member of the Class, for the establishment of the common fund, plus attorneys' fees, interest and costs.

**FOURTH CAUSE OF ACTION**
**(Against All Defendants for Breach of Implied Warranty)**

48.  Plaintiffs incorporate by reference each of the allegations contained in Paragraphs 1 through 56 of this Complaint.

49.  At all times mentioned herein, Defendant manufactured and/or supplied CertainTeed Shingles, and prior to the time it was purchased by Plaintiffs, and Defendant impliedly warranted to Plaintiffs, and to Plaintiffs' agents, that the product was of merchantable quality and fit for the use for which it was intended.

11
Complaint And Jury Demand

50. Plaintiffs and Plaintiffs' agents relied on the skill and judgment of the Defendant in using the aforesaid product.

51. The Product was unfit for its intended use and it was not of merchantable quality, as warranted by Defendant in that it had propensities to break down and fail to perform and protect when put to its intended use. The aforesaid product did cause Plaintiffs to sustain damages as herein alleged.

52. After Plaintiffs were made aware of Plaintiffs' damages as a result of the aforesaid product, notice was duly given to Defendants of the breach of said warranty.

53. As a direct and proximate result of the breach of said warranties, Plaintiffs suffered and will continue to suffer loss as alleged herein in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
(Against All Defendants for Violation of Indiana Deceptive Trade Practices Statutes)

54. Plaintiffs incorporate by reference each of the allegations contained in Paragraphs 1 through 62 of this Complaint.

55. The conduct described in this Complaint constitutes a violation of Indiana Code § 24-5-0.5-1 et seq., including Indiana Code § 24-5-0.5-3(a)(1)-(2).

56. Plaintiffs and members of the class have been injured as a result of the statutory violations, including misrepresentations and deceptions, described in this Complaint as a result of being induced thereby to purchase CertainTeed Shingles.

57. As a result of these statutory violations of law, Plaintiffs and the members of the Plaintiffs' class are entitled to receive equitable relief in such form as the Court may deem appropriate to correct or prevent such misconduct and remedy their injuries (including but not

limited to, injunctive relief equitable restitution, accounting, and other relief), damages, as well as costs and attorney's fees pursuant to Indiana Code § 24-05-0.5-4(b).

## SIXTH CAUSE OF ACTION

**(Against All Defendants for Fraudulent Concealment)**

58.     Plaintiffs incorporate by reference each of the allegations contained in Paragraphs 1 through 66 of this Complaint.

59.     At all times mentioned herein, Defendant had the duty and obligation to disclose to Plaintiffs the true facts concerning the CertainTeed Shingles; that is that said product was defective and unreliable. Defendant made the affirmative representations as set forth above to Plaintiffs, the Class and the general public prior to the date Plaintiffs purchased the CertainTeed Shingles while concealing the material described herein including the following:

60.     At all times mentioned herein, Defendant had the duty and obligation to disclose to Plaintiffs the true facts concerning the CertainTeed Shingles, that is that CertainTeed Shingles were defective, would prematurely fail, and otherwise were not as warranted and represented by Defendant.

61.     At all times mentioned herein, Defendant intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiffs and with the intent to defraud as herein alleged.

62.     At all times mentioned herein, Plaintiffs were not aware of the facts set forth above, and had he been aware of said facts, he would not have acted as he did, that is, would not have purchased CertainTeed Shingles.

63.     As a result of the concealment or suppression of the facts set forth above, Plaintiffs sustained damages in an amount to be determined at trial.

13    Complaint And Jury Demand

Indiana Complaint.doc

## SEVENTH CAUSE OF ACTION
(Breach of Contract)

64. Plaintiffs incorporate by reference each of the allegations contained in Paragraphs 1 through 72 of this Complaint.

65. Plaintiffs and the Class members have entered into certain contracts and warranty agreements with Defendant, including an express warranty. Pursuant to these contracts and agreements, including the express warranty, Defendant would provide Plaintiff and the Class members with Shingles that were of merchantable quality and fit for the use for which they were intended. Defendant were further obligated pursuant to the express warranty to repair and/or replace any defects or problems with the Shingles that Plaintiff and the Class members experienced. In exchange for these duties and obligations, Defendant received payment of the purchase price for these Shingles from Plaintiffs and the Class.

66. Plaintiffs and the Class satisfied their obligations under these contracts, warranties and agreements.

67. Defendant failed to perform as required by the express warranty and breached said contracts and agreements because it provided Plaintiffs and the Class with Shingles that are defective and unfit for their intended use and failed to appropriately repair and/or replace the Shingles.

68. As a result of the foregoing, Plaintiffs and the Class members are entitled to compensatory damages in an amount to be proven at trial.

14
Complaint And Jury Demand

Indiana Complaint.doc

## EIGHTH CAUSE OF ACTION
(Unjust Enrichment)

69. Plaintiffs incorporate by reference each of the allegations contained in Paragraphs 1 through 77 of this Complaint.

70. Substantial benefits have been conferred on Defendant by Plaintiffs and the Class and Defendant have appreciated these benefits.

71. Defendant's acceptance and retention of these benefits under the circumstances make it inequitable for Defendant to retain the benefit without payment of value to the Plaintiff and the Class.

72. Defendant, by the deliberate and fraudulent conduct complained of herein, has been unjustly enriched in a manner which warrants restitution.

73. As a proximate consequence of Defendant's improper conduct, the Plaintiffs and the Class members were injured. Defendant have been unjustly enriched, and in equity, should not be allowed to obtain this benefit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests of this Court the following relief, on behalf of themselves and all others similarly situated:

1. For an Order certifying the Plaintiffs Class, appointing Plaintiffs as Class Representatives, and appointing the undersigned counsel of record as Class counsel;

2. Equitable and injunctive relief enjoining Defendant from pursuing the policies, acts, and practices described in this Complaint;

3. For damages under statutory and common law as alleged in this Complaint, in an amount to be determined at trial;

15
Complaint And Jury Demand

Indiana Complaint.doc

4. Pre-judgment and post-judgment interest at the maximum rate allowable at law;

5. The costs and disbursements incurred by Plaintiffs and their counsel in connection with this action, including reasonable attorneys' fees; and

6. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs, on behalf of themselves and the members of the Class hereby demand trial by jury on all issues so triable.

Dated: May 2, 2007

HOVDE DASSOW & DEETS, LLC

/s/

Rob Dassow, Atty. No. 15145-64
10585 N. Meridian Street, Suite 205
Indianapolis, IN 46290-0849
Telephone: 317-818-3100
Facsimile: 317-818-3111

Clayton D. Halunen, Atty. No. 219721
Christopher Jozwiak Atty. No. 386797
HALUNEN & ASSOCIATES
220 South Sixth Street
Suite 2000
Minneapolis, MN 55402
Telephone: 612.605.4098
Facsimile: 612.605.4099

Robert K. Shelquist, Atty. No. 21310X
Yvonne M. Flaherty, Atty. No. 267600
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: 612.339.6900
Facsimile: 612.339.0981

16
Complaint And Jury Demand

Complaint.doc

Michael A. McShane
Jason T. Baker
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
Telephone: 415.982.1776
Facsimile: 415.576.1776

Arnold Levin
Frederick S. Longer
LEVIN, FISHBEIN & BERMAN
510 Walnut Street - Suite 500
Philadelphia, PA 19106-3697
Telephone: 215.592.1500
Facsimile: 215.592.4663

17
Complaint And Jury Demand